Bruce G. Hart, Esq.
Steamer Hart LLP
86 Fleet Street
Brooklyn, New York 11201
(917) 680-2722 - phone
(212) 500-7973 - fax
bhart@steamerhart.com

OF COUNSEL:
Steven Altman, Esq.*
Altman & Company P.C.
P.O. Box 590, 123 N. Sea Road
Southampton, New York 11969
(917) 207-3001 - phone
(646) 349-3387- fax
steve@commercialtriallawyer.com

*Pro hac vice application to be submitted

Attorneys for Plaintiff Maggie Haney

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

**MAGGIE HANEY**,

                             Plaintiff,

                -against-

**USA GYMNASTICS, INC. and MARK BUSBY**,

                        Defendants.

_____

**COMPLAINT FOR DECLARATORY RELIEF, DAMAGES AND TO VACATE ARBITRATION AWARD**

Plaintiff Maggie Haney, by and through her undersigned counsel, Steamer Hart LLP, for her Complaint against defendants USA Gymnastics, Inc. and Mark Busby alleges as follows:

### NATURE OF THIS ACTION

1.      USA Gymnastics, Inc. ("USAG") has openly and notoriously violated the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 et seq. (the "Sports Act"). USAG (a) failed to provide the plaintiff, Maggie Haney, with "fair notice and an opportunity for a hearing" before declaring her ineligible to participate in amateur gymnastic competition in

violation of Section 220522(a)(8) of the Sports Act, and (b) the hearing panel and subsequent arbitration decision rendered in her case are demonstrably inconsistent with USAG's Bylaws in violation of Section 220529(d) of the Sports Act.

2.      This is an extraordinary case in which a national governing body -- USA Gymnastics -- has so clearly breached its own rules it shocks the conscience.  Those breaches have and will continue to imminently result in serious and irreparable harm to the plaintiff Maggie Haney, and Ms. Haney has exhausted all of her internal remedies.

3.      USAG is so fearful of the truth being publicly revealed about its unconscionable treatment of Ms. Haney that it very recently, without any notice to Ms. Haney or any USAG member, surreptitiously changed its Bylaws and disciplinary rules, creating new expedited procedures with the obvious and specific intention of trying to silence her.  By these most recent outrageous actions, USAG is seeking to punish Ms. Haney for reporting to a member of the press the truth:  that she has been falsely accused, was tried and "convicted" in a kangaroo court, and that USAG has since heinously and wrongfully publicized Mr. Haney's suspension on its website alongside men whom USAG despicably allowed to molest young girls.

4.      Maggie Haney never abused any athlete she trained.  As detailed below, the "hearing" held under USAG's auspices was tantamount to no hearing at all.  Never before (nor since) Ms. Haney's case has USAG suspended a coach based <u>solely</u> on claims of alleged emotional harm, where there was not a single allegation of physical or sexual abuse.  A corrupt USAG hearing panel was "constructed" in the words of USAG Legal Counsel, defendant Mark Busby, to prosecute Ms. Haney after a publicly biased athlete "volunteered" to serve on it to hear the claims, and a farce of a hearing was held.  Defendant Busby, who has since been left USAG amid unspecified controversy, led the charge against Maggie Haney.  That in prosecuting Ms. Haney, Mr. Busby and USAG failed to comply with numerous provisions in USAG's

then-governing Bylaws, USAG's Safe Sport Investigation & Resolution Procedures, its own hearing procedures and, consequently, the Sports Act is indisputable.

5. USAG cannot deny that Mr. Busby committed prosecutorial misconduct during the USAG proceedings against Ms. Haney by intentionally withholding from the USAG hearing panel an enormous amount of exculpatory evidence in his possession. USAG also cannot deny that Mr. Busby falsely instructed the USAG hearing panel which heard the case -- in clear violation of the the Sports Act and U.S. Olympic and Paralympic Committee ("USOPC") policy -- that Ms. Haney was not entitled to any due process at the hearing.

6. The principal complainant in the case against Ms. Haney (and actually the only one to testify) was Laurie Hernandez, who earned Olympic silver and gold at the 2016 Olympics after having studied and trained with Ms. Haney for more than 10 years. Ms. Hernandez's allegations were not news to USAG. She asserted them in late 2016 after the Olympics, when she suddenly dropped Ms. Haney as her coach and mentor after hiring an agent and turned pro; capitalizing on her then found fame, making numerous commercial appearances including a starring role on the popular show "Dancing With The Stars." Ms. Hernandez's charges were not credible in 2016, and USAG knew it. Ms. Hernandez, her mother Wanda Hernandez and Laurie's her then newly hired agent used them as a ploy and excuse to renege on Wanda's promise to pay Ms. Haney a portion of the monies received from Laurie's endorsements. So USAG took no action based on the Hernandez family's complaints.

7. But in late 2019, things changed. With the 2020 Olympics approaching, Wanda Hernandez was scheming to find ways to keep her daughter, Laurie, relevant. So Wanda Hernandez came at Ms. Haney again, soliciting athletes who had left Ms. Haney's gym, MG Elite. Wanda started with her daughter's best friend Emily Liszewski. Ms. Liszewski had suffered a serious fall while training at the gym in April 2016 with one of Ms. Haney's assistants. Although Ms. Lizsewski (a) fully recovered from the accident, (b) stayed at MG Elite for seven months thereafter, and (c) her mother in writing profusely thanked Ms. Haney for her "quick

thinking and professionalism the whole time [which] probably made the difference in her [Emily's] outcome 💗." As the direct result of Ms. Haney's training and "quick thinking" Ms. Lizsewski is today a Division I college gymnast at the University of Pittsburgh.

8.    At the same time in 2019, USAG was beleaguered with negative press, insolvent, and on the brink of economic collapse and losing its USOPC certification. USAG was reeling in the aftermath of the allegations that its former team doctor Larry Nassar had raped and sexually assaulted at least 265 young women and girls dating back to 1992, and his conviction and sentencing to 175 years in prison for his crimes. Desperate to change the narrative, USAG dredged up the stale and uncorroborated Hernandez allegations, added latently asserted contentions by Ms. Liszewski, and filed a misconduct complaint against Ms. Haney.

9.    Although Wanda Hernandez was successful soliciting others to complain about Ms. Haney, she enlisted the aid of Jessica McCusker, mother of 2021 Olympic hopeful Riley McCusker (who was struggling at the time), to do her dirty work. Mrs. McCusker was ruthless, spending the better part of 2019 badgering MG Elite athlete families showing up unannounced at houses trying to coerce people to file complaints against Ms. Haney. Jessica McCusker had no shame. She asked one parent if there was any way she could get the Hernandez complaint into the hands of the media. Another parent Mrs. McCusker solicited to file a complaint (and ultimately did) admitted their daughter did not want to be involved. Yet another parent who succumbed to Mrs. McCusker's pressure confessed her daughter was not mistreated by Ms. Haney but agreed to participate in the hearing to support her friends.

10.    Jessica McCusker's solicitation of other athletes to complain about Ms. Haney was unscrupulous. All through 2019 and the beginning of 2020, while her own daughter Riley continued to train solely with Ms. Haney -- Mrs. McCusker dropped Riley off and picked her up from practice each day and stayed at the gym afterwards for hours socializing with Ms. Haney --  she was hounding other parents to complain about her to USAG. In fact, on February

3, 2020, the first day of the USAG hearings, when Ms. Haney was suspended on an interim basis without notice and a proper Sport Act hearing, Riley McCusker was at the gym waiting for Ms. Haney to walk in and coach her. Unbeknownst to Ms. Haney at the time, but now crystal clear, Mrs. McCusker's intent (as the McCuskers have since done) was to sue Ms. Haney and MG Elite for damages based on demonstrably false allegations that Riley suffered from "rhabdomyolysis" as the result of something Ms. Haney did (rather than her mother's refusal to properly feed Riley -- which is the demonstrable truth). The truth was and is that Riley's mother bragged about how she forced Riley to eliminate carbohydrates and salad dressing from her diet, while at the same time Ms. Haney was repeatedly telling Mrs. McCusker that Riley "needs to eat!"

11. All of the allegations against Ms. Haney that were ultimately submitted to the USAG hearing panel (by and solicited by Wanda Hernandez and Jessica McCusker) should have been referred to the U.S. Center for Safesport, as USAG had done in each prior instance involving claims concerning USAG National Team coaches like Ms. Haney. Not one other National Coach has been called before a USAG panel; all other cases involving coaches whose conduct have been called into question have been referred to the Center for Safesport. But USAG seized the opportunity to seek to curry media favor (to try to publicly demonstrate a change in culture from the Nassar era) and kept the case, in violation of its own Safe Sport Investigation & Procedures and the U.S. Center for Safe Sport Code for the U.S. Olympic and Paralympic Movements. USAG then pressed forward with its mockery of a purportedly fair hearing in February and March 2020.

12. As detailed below, the USAG hearing was a sham. Mr. Busby's prosecution of Ms. Haney on behalf of USAG was in direct contravention of USAG's Bylaws and procedures put in place specifically for the Haney case. And, it was trial by ambush. Mr. Busby, among other misconduct, (a) failed to give Ms. Haney adequate notice of the charges against her, (b) failed to have USAG timely establish and approve hearing procedures that, at a

minimum, established a reasonable and fair schedule and guidelines for discovery, (c) failed to identify USAG's witnesses for Ms. Haney and her trial counsel in advance of the hearing, (d) failed to provide Ms. Haney's trial counsel with copies of the documents contained in USAG's investigative file, (e) failed to provide Ms. Haney's counsel with copies of any exhibits prior to presenting them to the hearing panel, (f) failed to keep the proceedings conducted by the hearing panel confidential, and (g) made no effort whatsoever to comply with even the most lax evidentiary rules -- repeatedly presenting second and third hand hearsay and submitting documents to the hearing panel without making any effort to provide any foundation for their admission into evidence.

13.     Further violating USAG's Bylaws, defendant Busby, acting at all times during the hearing as Legal Counsel for USAG, committed heinous prosecutorial misconduct. He withheld and suppressed substantial exculpatory evidence from the hearing panel (i) during pre-trial proceedings, (ii) the first day of the hearing when the panel suspended Ms. Haney on an interim basis, and (iii) throughout the remainder of the hearing.  It cannot be disputed that USAG Legal Counsel Busby had in his possession a mountain of evidence favorable to Ms. Haney -- for months prior to the start of the hearing -- in the form of emails to him personally from 16 different prospective witnesses, which he and USAG withheld from the hearing panel.

14.     Mr. Busby, in yet another violation of USAG's Bylaws, also instructed the hearing panel that Ms. Haney was not entitled to any form of due process in connection with the proceedings against her.  That statement by Mr. Busby was false and he knew it, as due process is mandated in all USAG disciplinary proceedings pursuant to the Sports Act and Article IX, Section 9 of the Bylaws of the USOPC.

15.     Since the USAG hearing panel was neither disinterested nor impartial (and in fact demonstrably biased), Ms. Haney never had a chance.

16.     Based on Mr. Busby's corrupt presentation and withholding of evidence, by decision issued on April 29, 2020, the biased USAG hearing panel suspended Ms. Haney for

what was then and remains today an unprecedented eight-year term.  Ms. Haney had already been serving an interim suspension since February 3, 2020, so the actual term of the suspension imposed by the USAG hearing panel was eight years and three months.  Ms. Haney was constrained by USAG's Bylaws and procedural rules to appeal that ruling to a single arbitrator, which she did.  But her rights in that proceeding were severely limited.

17.     On appeal, in an award dated December 3, 2020, the arbitrator nevertheless found that USAG failed to provide Ms. Haney with proper notice of the allegations made by four of her accusers.  The arbitrator accordingly vacated all findings associated with those four athletes.  But the arbitrator reduced Ms. Haney's suspension by a mere three years. So Ms. Haney is now serving a five-year and three-month suspension for alleged verbal abuse. There is absolutely no precedent or basis for even that reduced sentence.  USAG's punishment of Ms. Haney  was four times harsher than that imposed on coaches who have been proven to have physically and sexually abused young girls.

18.     Yet, astonishingly, USAG -- days before the arbitrator's decision in the Haney case -- implemented what at best for USAG could be viewed as a complete change in policy.  USAG refused to suspend four coaches who have admitted to committing abusive emotional and physical violence against female athletes.  USAG is today allowing those coaches (Eduard Azarian, Vanessa Gonzales, Amanda Hensley and Perry Davies) to continue as members of USAG, conditioned only on their completion of certain educational and safety training courses.  No such offer was ever made to Ms. Haney.  USAG appears to apply all of its rules much differently to Ms. Haney.  The USAG hearing panel decision in Ms. Haney's case specifically ordered her to take certain continuing education courses.  But USAG has to date refused to allow Ms. Haney to take those courses, rejecting her specific request to do so.

19.     Ms. Haney has been used and abused by USAG and its now former Legal Counsel, defendant Busby.  That USAG scapegoated Ms. Haney in an effort to deflect attention from its atrocious handling of the decades long sexual abuse of young athletes by

USAG team doctor Larry Nassar could not be clearer.  USAG's recent about face, allowing other coaches to continue as USAG members despite their admissions of committing child abuse, is an outrage.

20.     Ms. Haney has been and continues to be tarred and feathered by USAG as it publicly displays her suspension alongside Larry Nassar's bar, the suspension of sexual predators, and others convicted of crimes against minors.  Her punishment of five years and three months is not a suspension.  It is tantamount to a lifetime ban because it in effect precludes her from coaching any USAG athlete until April 2025 and thus bars her from any meaningful involvement in the Olympics until 2028.

21.     There are more than 35 gymnasts and their families who are waiting and pleading for Ms. Haney to be permitted to return to coaching now.  They all understand fully the false allegations leveled against Ms. Haney.  Each of those families nevertheless continue to stand with and in support of Ms. Haney, and believe their daughters are safe in Ms. Haney's custody.  The actual and continuing harm to both Ms. Haney and those families she has served is catastrophic.  Ms. Haney has been unjustifiably bashed in the media, and will continue to be unless and until she has been provided with a full and fair hearing of the charges alleged against her, which she is entitled to under USAG's Bylaws and the Sports Act.  The damage to Ms. Haney and her family, particularly her own daughter who is an MG Elite gymnast has been and continues to be catastrophic.

22.     Ms. Haney has no further recourse under USAG's Bylaws.

23.     Accordingly, as further detailed below, in this action she seeks (i) a declaration that both the hearing panel decision against her and the arbitration award that followed it are void *ab initio* and that both be vacated, and (ii) damages against USAG and the principal bad actor -- defrocked USAG Legal Counsel Mark Busby -- for the indisputable willful and contumacious violation of USAG's Bylaws and written procedures during the course of the

underlying proceedings.  Ms. Haney also independently seeks vacatur of the arbitration decision in her case under the Federal Arbitration Act, 9 U.S.C. § 10, et seq.

## PARTIES

24.      Plaintiff Maggie Haney is a world renowned gymnastics coach.  She has devoted her life to nurturing young girls to be the best they can be as athletes and as human beings.  She resides in New Jersey.

25.      Defendant USA Gymnastics. Inc. ("USAG") is a Texas corporation.  Its principal place of business is in Indianapolis, Indiana.

26.      Defendant Mark Busby is a lawyer.  He was until January 2021 USAG's Safe Sport Legal Counsel.  He personally prosecuted and persecuted Maggie Haney.  Mr. Busby, on information and belief, resides in Indiana.

## JURISDICTION

27.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the plaintiff has alleged a violation of the Sports Act, 36 U.S.C. § 220501 et seq.

28.      The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the plaintiff has alleged claims under the Federal Arbitration Act, 9 U.S.C. § 10, et seq.

29.      Subject matter jurisdiction also lies in this Court pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

30.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**TABLE OF CONTENTS**

**Page**

FACTS.....................................................................................................11

I.      The Genesis of USAG's Claims Against Ms. Haney and the
        Real Motive for Laurie Hernandez's False Allegations Against Her....................11

II.     USAG's Numerous Staggering Violations of its Bylaws, Safe Sport
        Investigation & Resolution Procedures, and its Own Hearing Procedures...........19

        A.      USAG Failed to Provide Ms. Haney with
                Fair Notice of the Claimed Charges.......................................................19

        B.      USAG Did Not Permit Ms. Haney to
                Review Any Evidence Prior to the Hearing...........................................20

        C.      Defendant Busby Falsely Instructed the Panel
                that Ms. Haney was Not Entitled to Due Process....................................21

        D.      Mr. Busby Also Falsely Instructed the Panel that A Hearing
                Was NOT Required to Suspend Ms. Haney on an Interim Basis................26

        E.      There Was No Hearing Before Ms. Haney was Suspended on
                An Interim Basis Despite Her Counsel's Specific Request for One............27

        F.      Mr. Busby Suppressed Substantial Exculpatory Evidence......................30

        G.      The USAG Hearing Panel Prevented Ms. Haney From
                Calling Numerous Additional Witnesses and Presenting
                Mountainous Written and Oral Evidence in Support of Her Case.............40

        H.      The USAG Hearing Panel Was Biased...................................................46

        I.      USAG's Most Recent Efforts to Silence Ms. Haney................................51

LEGAL CLAIMS.......................................................................................52

        COUNT I - For a Declaratory Judgment Under the Sports Act ............................52

        COUNT II - For Money Damages Under the Sports Act.......................................54

        COUNT III - For Vacatur of the Arbitrator's Award under the FAA.......................54

PRAYER FOR RELIEF................................................................................55

**FACTS**

I.     **The Genesis of USAG's Claims Against Ms. Haney and the**
       **Real Motive for Laurie Hernandez's False Allegations Against Her**

31.    In 2016, Ms. Haney was at the top of her profession as a world class gymnastics coach.  She was producing great athletes.  Her team, MG Elite, was thriving; winning many if not most competitions in which they participated by wide margins.  Maggie Haney's girls were happy and there was no drama.  Ms. Haney was being solicited by families from all across the country who wanted to move to New Jersey to train under her tutelage.  Some families moved from out of state and others lived separately so their daughters could train with Ms. Haney.

32.    The brightest star studying with Ms. Haney was Laurie Hernandez, who was 16 years old.  Ms. Hernandez had been training with Ms. Haney for more than ten years at that point.  Ms. Haney's sister introduced Ms. Haney to Ms. Hernandez when she was just five years old.  Ms. Haney's sister was then teaching recreational gymnastics classes at the same gym facility in New Jersey and approached her sister.  Ms. Haney's sister said she believed the then 5-year old Ms. Hernandez was super-talented and suggested her elite coach sister Maggie (the plaintiff) should take a look at her, which she did.

33.    Ms. Hernandez joined Ms. Haney's team immediately, when she was six years old, and trained exclusively with Ms. Haney from 2006 until 2016 when she won Olympic gold and silver at the 2016 Games in Rio de Janeiro.  During that 10-year period, Ms. Haney and Ms. Hernandez spent thousands of hours, days upon days, weeks upon weeks, month after month and year after year together training and travelling to gymnastic meets all over the country and the world.  Ms. Hernandez frequently stayed in the Haney family home.  She shared literally hundreds of meals with Ms. Haney, her family and the other members of Ms. Haney's gymnastics team, and became fully integrated into the Haney family.

34.     Ms. Hernandez described her relationship with Ms. Haney at the time this way:  "I have a lot of trust in her [Ms. Haney].  All I can do is trust her.  She has a really good heart."  By all accounts the relationship between Ms. Haney and Ms. Hernandez was stellar.  Instagram posts praising Ms. Haney that had been up for years vanished just weeks before the Haney hearing.  For example, on March 19, 2016, Laurie Hernandez described Ms. Haney in a post she made on her personal Instagram account as "the best coach ever":



35.    In August 2016, Ms. Hernandez posted a picture of the gold medal USA

team on her personal Instagram account and under the team picture stated the following::

> I definitely want to thank my coach @maggiehaney26 for staying
> by my side since 2005 and dealing with me every day in the gym
> haha!  As much as a sacrifice I make for this sport, you make as
> much for me every day and I'm so grateful.

36.    Another Instagram post by Ms. Hernandez on August 16, 2016 stated::



37.     That same day, Ms. Hernandez made yet a post on her FaceBook account effusively thanking Ms. Haney's partner (in whose home she had stayed frequently with their two young children) for his support as well in providing the music for all of her floor routines:



38.    Laurie Hernandez's parents too both openly praised Ms. Haney.  In an interview with the gymnastics press, Ms. Hernandez's mother Wanda Hernandez described her daughter Laurie's relationship with Ms. Haney as follows:

> Not Secure — intlgymnast.com
>
> gym. There is also a lot of self-care required for Laurie, like physical therapy and acupuncture. We also have to make sure Laurie is keeping up with her schoolwork because she is homeschooled. A lot of people have the weekends where the children can relax and do certain things, but we just keep moving. Due to our busy schedules, we had to say no to family and friends a lot of times, but they understood our commitment.
>
> **On Laurie's relationship with coach Maggie Haney…**
>
> Laurie just loves Maggie. They have an awesome relationship, and Laurie understands Maggie is no nonsense. Maggie is very disciplined, determined, and has a tremendous passion for the sport, especially Laurie's gymnastics. What makes this relationship work is we all come together to do what we feel is best for Laurie. We work as a team to keep her safe and healthy.
>
> **On Laurie's success in 2016…**
>
> As a parent, you always want your child's dream to come true, but it's so difficult. These girls are all working so hard for only five spots. You just have to hope for it, and you just have to have faith. Laurie and Maggie have been working so hard, and I noticed after P&G Championships that something seemed to come to life in Laurie.
>
> I think it was her trusting herself, her training and her faith. God has a plan and if it is His will, then it will happen. Her belief of faith and her training give her confidence. She has such an incredible drive and determination. She has a fire in her eyes and a drive to succeed that is so obvious, even when

39.    Wanda Hernandez was no stranger to Ms. Haney and her MG Elite team. She was in the gym weekly while her daughter was training.  Mrs. Hernandez worked in the gym

in a number of capacities.  Wanda Hernandez, as a social worker, had a professional obligation to report any mistreatment she might have observed.  She taught leadership classes at the gym for Ms. Haney's team.  During those classes, the gymnasts discussed things such as what had gone on in practice, things the girls liked, what if anything disturbed them, and how to flip a negative into a positive.  Wanda never came to Ms. Haney with concerns she had for any athlete training at MG Elite, physical, psychological or emotional well being and most certainly never once raised any issue about her daughter, Laurie.

40.     The Hernandez family had limited financial resources, so Ms. Haney offered to and paid Wanda Hernandez for teaching those classes.  Wanda Hernandez also frequently insisted on receiving a significant discount or not be charged at all for Ms. Haney's coaching of her daughter Laurie.

41.     The Hernandez family did not pay a penny for any of the homeschooling Laurie received from third grade until she was 16 years old, and she was given significant discounts or waivers from numerous other fees other MG Elite gymnast families were required to pay.  Several times Wanda Hernandez told Ms. Haney that if the Hernandez's were required to pay anything she would have to pull Laurie from the team.  Ms. Haney not only obliged, but she gave Mrs. Hernandez an additional job at the gym so she could earn a few extra dollars blowing up balloons and performing other tasks helping set up for parties.  Wanda Hernandez was also allowed to run a concession stand at competitions at the gym keeping 100% of the proceeds.   Mrs. Hernandez was further permitted to and did host holiday parties and sleepover gatherings at the gym, where she (again) retained 100% of the proceeds.  Wanda Hernandez was a constant presence in the gym.

42.     At no time prior to the 2016 Olympics in Rio did Laurie Hernandez, her mother Wanda or anyone else complain about Ms. Haney's coaching practices.  If there was even a hint of a problem, surely there would be some evidence of it and Ms. Hernandez's mother dougWanda, the social worker who was physically present in the gym as much or more

than any of the other parents, would have presented it.  But there was not a single complaint. To the contrary.

43.     In a August 9, 2016 text message from Wanda Hernandez to Ms. Haney, Mrs. Hernandez continued to shower Ms. Haney with praises, and Laurie looked as happy as can be in the picture Ms. Haney sent her mother in response.



44.     Things changed after Laurie Hernandez hired an agent with a track record of separating athletes from coaches and set off for her then new gig on the popular television series "Dancing With The Stars."  In late 2016 -- without warning or explanation -- Ms. Haney was released as Laurie Hernandez's coach.  Not a word was spoken or information given as to why.  The message was communicated to Ms. Haney by Wanda Hernandez in a short phone conversation lasting no more than 90 seconds.  Ms. Haney was stunned.  Her last conversation with Laurie Hernandez, was a short time before that, and it lasted more than three hours. During that call they spoke about hair and nails, Dancing With the Stars, and Laurie told Ms. Haney she intended to continue to train with Ms. Haney and try to compete in the 2020 Olympics.  But it was not until just days before the hearing in 2020 that Ms. Hernandez deleted all of her social media posts which overwhelmingly praised and profusely thanked Ms. Haney for the ten-plus years they spent together.

45.  The obvious unspoken reason though was clear -- money.  The Hernandez family had unconditionally promised in writing to pay Ms. Haney a percentage of the income Laurie was to receive from endorsements.  Ms. Haney and Wanda Hernandez agreed that tour monies were to go towards college for Laurie, and told Ms. Haney that she would be paid five percent of all endorsements.  Ms. Haney later found out that Wanda Hernandez told her husband Anthony Hernandez that she wanted to cut Ms. Haney down to 2.5% but Mr. Hernandez said: "No Wanda, Maggie did everything for us.  She deserves five percent." Ultimately, though Wanda Hernandez had her way because she concocted a story about claimed verbal abuse, sold her daughter Laurie on it, and the Hernandez family refused to pay Ms. Haney any money.

46.     To date, Maggie Haney has not received a penny from any of Ms. Hernandez's many endorsements.  And those revenues were substantial.  Laurie Hernandez herself was quoted in the media saying "I made a fortune on Dancing with the Stars."  Ms. Haney has not sued Ms. Hernandez or her family for breach of those promised payments.  She

has declined to do so because training Lauie Hernandez was, for Ms. Haney, never about

money.  Ms. Haney is an elite gymnast coach because of her great passion for the sport of

gymnastics, and she gets unbounding pleasure from the privilege of working with young girls

and helping them to be the best gymnasts and women they can be.

## II. USAG's Numerous Staggering Violations of its Bylaws, Safe Sport Investigation & Resolution Procedures, and its Own Hearing Procedures

### A. USAG Failed to Provide Ms. Haney with Fair Notice of the Claimed Charges

47.     On June 4, 2019, Ms. Haney received the Misconduct Complaint on

which the USAG proceedings against her were based.  No alleged claimants were identified in

that document.

48.     On or about November 22, 2019, USAG issued a document entitled

"Summary of Allegations" describing the alleged misconduct by Ms. Haney and contending that

certain SafeSport Code and USA Gymnastics Code of Ethical Conduct violations occurred with

respect to seven athletes.  No names of the allegedly complaining athletes were identified in

that document either.

49.     On or about December 9, 2019, USAG provided Ms. Haney's counsel

with a document entitled "Investigation Report."  That "Report" is a mere six pages and

contained not a single piece of supporting evidence.  It identified seven potential claimants, but

indicated that only two claimants had been interviewed by USAG personnel.  The Investigation

Report also reflected that allegations by the other five claimants were based solely on

information from their parents and/or third parties.

50.     The December 9, 2020 USAG Investigative Report clearly violated

Section 10.7 of USAG's Bylaws in that it failed to include all of the "relevant documents and

interviews (or attempted interviews) with the Complainant[s], any Adverse Party and other

persons having information related directly to the subject matter of the Complaint[s]."

51.    On February 3, 2020, when the USAG hearings panel convened, Ms. Haney was charged with allegedly improper conduct with respect to 11 athletes, <u>seven of whom she never coached</u> and four of whom about whom she was given absolutely no notice.

52.    The failure by USAG to give Ms. Haney proper notice of the charges alleged against her is a violation of Section 10.10(a) of USAG's Bylaws in that it resulted in USAG conducting a hearing that was not "timely, fair and impartial" and is a violation of the Sports Act.

### B.    USAG Did Not Permit Ms. Haney to Review Any Evidence Prior to the Hearing

53.    Section VI.D.3.d.iii. of USAG's Safe Sport Investigation & Resolution Procedures required USAG to afford Ms. Haney an opportunity, <u>before the hearing</u>, to review the information that will be submitted to the hearing panel.

54.    Section VI.D.4.i.iii. of USAG's Safe Sport Investigation & Resolution Procedures further required USAG to provide Ms. Haney with "any documents upon which the Complainant[s] will rely during the presentation of [their] case."

55.    USAG clearly violated both of these requirements stated in its own procedures as Ms. Haney was not permitted to review <u>any</u> information that was submitted to the panel prior to the hearing.

56.    USAG <u>also</u> violated the separate set of hearing procedures specifically put in place for the Haney hearing.  The "Notice of Hearing Procedures" issued on November 25, 2019 in connection with the USAG proceeding against Ms. Haney specifically provided as follows:

> <u>Section 2</u>.  <u>Deadline for Submissions</u>.  At least 15 days prior to the hearing, USA Gymnastics (the "Corporation") shall provide the Adverse party with these proposed Notice of Procedural and Hearing Deadlines.  The Notice shall provide a <u>deadline for submission of evidence to be considered at the hearing</u>, provision of the underlying allegations, <u>a preliminary witness and exhibit</u>

summary, and where applicable, <u>documents collected by the</u> <u>Investigator</u> including the Investigator's summary.

(emphasis added)

57.    On January 22, 2020, a document entitled "Notice of Procedural and hearing Deadlines" was issued by the hearing panel chair.  That Notice sent a "pre-hearing discovery deadline" for USAG of January 25, 2020.  That Notice violated Section VI.D.4.h. of USAG's Safe Sport Investigation & Resolution Procedures because the schedule it established did not provide for reasonable or fair guidelines for discovery.

58.    And, in any event, USAG failed to comply with the deadlines its own panel set.  Prior to the hearing, USAG failed to provide Ms. Haney with (a) any of the evidence that was considered at the hearing, (b) any witness summary, (c) any exhibit summary, or (d) any of the documents collected by the investigator.

59.    Each of these failures is an independent violation of USAG's Safe Sport Investigation & Procedures.  And each failure is a violation of Section 10.10(a) of USAG's Bylaws in that it resulted in USAG conducting a hearing that was not "timely, fair and impartial" and is a violation of the Sports Act.

**C.    Defendant Busby Falsely Instructed the Panel**
**that Ms. Haney was Not Entitled to Due Process**

60.    USAG was mandated by the USOC Bylaws and the Sports Act to provide Ms. Haney with due process in the disciplinary proceedings it brought against her.  As Professor Matthew J. Mitten, renowned Amateur Sports Law expert, esteemed Professor of Law and Director of the National Sports Law Institute at Marquette University Law School, has explained, Article IX of the U.S. Olympic Committee's Bylaws creates important procedural and substantive rights for all athletes and coaches who meet the eligibility standards established by the National Governing Body or Paralympic governing body for the sport in which he or she competes. Mitten, Matthew J., <u>Legal Protection of Sports Participation Opportunities in the United States of</u>

<u>America</u>, FOR THE RECORD, National Sports Law Institute, Vol. 19, No. 9, October-December 2008.

61.    Under Article IX, § 9.1 of the USOC Bylaws, "[n]o member of the USOC, such as an NGB, 'may deny or threaten to deny any amateur athlete the opportunity to participate' in a protected competition and <u>an NGB is required to provide fair notice and an internal hearing that provides **an appropriate level of procedural due process** before declaring an athlete ineligible to participate</u>."  (<u>Id</u>. internal citations omitted) (emphasis added); <u>see</u> <u>also</u> <u>In the Matter of Thomas Rahmi and USA Taekwondo, Inc.</u>, AAA Case No. 01-20-0000-5424, March 4, 2020, Arbitrator Matthew J. Mitten, confirming that procedural due process is required under the Ted Stevens Act and Section 9 of the USOC Bylaws)  Professor Mitten was among the arbitrators the AAA suggested to hear Ms. Haney's appeal and she consented to his serving in that capacity.  Not surprisingly though, no doubt knowing it would be called to task for Ms. Busby's mishandling of the Haney hearing, USAG rejected Professor Mitten.

62.    The USOC Bylaws provide in Section 9.1 that "Any reference to athlete in <u>this Section 9 will also equally apply to any coach</u>, trainer, manager, administrator or other official."  (emphasis added)  The Ted Stevens Act specifically states that an athlete or coach must have a hearing before being declared ineligible.  36 U.S.C. § 220522 (a)(8).

>  (a)    General.—An amateur sports organization is eligible to be recognized, or to continue to be recognized, as a national governing body only if it—
>
>                    *            *            *
>
>  (8) provides an equal opportunity to amateur athletes, coaches, trainers, managers, administrators, and officials to participate in amateur athletic competition, without discrimination on the basis of race, color, religion, sex, age, or national origin, and with fair notice and opportunity for a hearing to any amateur athlete, coach, trainer, manager,

administrator, or official before declaring the individual ineligible to participate;

63.     The USOC in fact has a "Due Process Checklist" listing specific requirements to be included in any such hearing under the Ted Stevens Act.  A copy of the USOC Due Process Checklist is attached as Exhibit F.  It provides as follows:

### USOC Due Process Checklist

The Ted Stevens Olympic and Amateur Sports Act (TSOASA) requires that an athlete have a hearing before being declared ineligible [§220522 (a)(8)].  The USOC recommends the following be included in such a hearing:

- Notice of the specific charges or alleged violations in writing, and possible consequences if the charges are found to be true;
- Reasonable time between receipt of the notice of charges and the hearing within which to prepare a defense;
- The right to have the hearing conducted at such a time and place so as to make it practicable for the person charged to attend;
- A hearing before a disinterested and impartial body of fact finders;
- The right to be assisted in the presentation of one's case at the hearing, including the assistance of legal counsel, if desired;
- The right to call witnesses and present oral and written evidence and argument;
- The right to confront and cross-examine adverse witnesses;
- The right to have a record made of the hearing if desired;
- The burden of proof shall be on the proponent of the charge, which burden shall be at least a "preponderance of the evidence" unless the NGB requires or provides for a higher burden of proof;
- A written decision, with reasons therefore, based solely on the evidence of record, handed down in a timely fashion;
- Written notice of appeal procedures, if the decision is adverse to the person charged, and prompt and fair adjudication of the appeal.

64.     Drafted by Edward G. Williams, Esq., long-time advocate of due process rights of athletes, in 1984, the USOC recommended that this Due Process Checklist be adopted by all NGBs.  Mr. Williams, now of counsel to Stewart Occipinti, LLP in New York, has explained that "[t]his checklist specifies the minimum protections to which athletes are entitled in the

hearings held by National Governing Bodies, as mandated by the Sports Act."

(http://www.somlaw.com/profiles_egw) (emphasis added)

      65.    Regarding the USOC Due Process Checklist, in Matter of Raghu

Nadmichettu and Mark Kazinski and United States Table Tennis Association, AAA # 77 190 169

10 JENF, Arbitrator (and noted sports law lawyer) Jeffrey G. Benz, Esq. observed that:

> While the USOC's Due Process Checklist may not have the force
> of law, its tenets represent generally-accepted due process
> principles under American law, and it appears to have been
> promulgated, and never withdrawn or challenged, by the USOC or
> questioned by an arbitrator.  As a result, the Arbitrator finds the
> USOC Due Process Checklist to be an appropriate standard
> against which to judge the due process provided by a NGB to an
> athlete in disciplinary and other matters.  The view of the Arbitrator
> is consistent with that of arbitrators in other USOC Section, or
> Article, IX cases.

(Nadmichettu, Award of Arbitrator, April 23, 2010 at p. 5, n.5)   In Nadmichettu, the Arbitrator

voided the claimants' suspensions and held that the prior Ethics Committee decision against

them was "of no force and effect."  (Id. at p. 7)

      66.    The USOC Audit Division also has a standard form Compliance Checklist

that addresses the issue of due process in NGB disciplinary/grievance hearings.  The "Objective

and Scope" of the USOC Compliance Checklist is to determine whether or not NGBs are

compliant in the area of due process, among others.  The stated purpose of the USOC

Compliance Checklist is to verify that NGBs are in compliance with the key elements of the

Sports Act, the USOC Bylaws and certain USOC policies, in order to demonstrate ongoing

commitment to the values and requirements of membership in the USOC.  Due process in

grievance matters is specifically addressed in the USOC Audit Division Compliance Checklist in

Items 13, 14 and 19 through 21:

**Due Process and Athlete Representation**

13    Do you provide procedures for the prompt and equitable
resolution of grievances of your members?

14      Do your grievance procedures provide for fair notice and opportunity for a hearing to any athlete, coach, trainer, manager, administrator or official before declaring the individual ineligible to participate?

*       *       *

**SafeSport**

19      Do you have USOC SafeSport language in your bylaws that provides jurisdictions to the U.S. Center for Safe Sport?

20      Do you have a USOC-compliant Athlete Safety Policy?

21      Do you have a grievance process that is materially free of bias and conflicts of interest for SafeSport allegations, and includes the opportunity for review by a disinterested individual or body?

67.      Yet astonishingly, USAG Legal Counsel Mark Busby Falsely Instructed the USAG hearing panel that heard Ms. Haney's case that she was NOT entitled to due process.  That Ms. Haney was entitled to due process at and in connection with the USAG Panel Hearing ought not have been in question.  Given the seeming abundance of legal authority definitively stating that <u>due process is required in all U.S. Olympic Committee National Governing Body disciplinary proceedings</u>, one might expect the matter would not be in issue.  But at the outset of the proceedings -- before a single witness was called or a document submitted -- USAG Legal Counsel Busby specifically and emphatically instructed the Hearing Panel to the contrary:

MR. BUSBY:   I need to make a record . . . .

*       *       *

[T]o characterize this process more accurately, **this is not a due process scenario**.  We are not a government actor.  This is a fair process scenario, and a constitutional **matter such as confrontation and cross-examination are not inherent in this process** beyond what's in our bylaws.

(Hearing Panel Transcript - February 3, 2020, p. 23, line 17, p. 24, lines 18-23)  (emphasis

added)  As Ms. Haney's counsel reiterated in a February 4, 2020 email to Mark Busby:

> Another troubling issue is the fact that you regularly remind all who
> will listen . . . that Due Process doesn't apply ...only fair process.
> The degree of disconnect on all of these issues is mind-numbing.
> I understand that you are representing your client and have a job
> to do, but no part of this has been even remotely equitable.  No
> reason to respond, the facts and transcripts will speak for
> themselves.  This has been far from equitable or fair.  I suspect
> you know that.

68.    Mr. Busby's instruction to the Panel that Ms. Haney was not entitled to

due process is another violation of Section 10.10(a) of USAG's Bylaws in that it resulted in

USAG conducting a hearing that was not "timely, fair and impartial" and is a violation of the

Sports Act.

### D.    Mr. Busby Also Falsely Instructed the Panel that A Hearing Was NOT Required to Suspend Ms. Haney on an Interim Basis

69.    The USOC Due Process Checklist and the Sports Act make abundantly

clear that an interim measure may not be imposed on a coach without a hearing.  Yet USAG

Legal Counsel Busby, misstated the applicable law to the hearing panel on this issue also.  Mr.

Busby shockingly was of the view and misrepresented to the Panel that:

> We [USAG] can impose an interim measure before a
> Hearing Panel is impaneled at our whim [though he claimed
> USAG does not do it] without first carefully evaluating their
> testimony, and preferring them to a hearing Panel as soon as
> possible.

(Hearing Panel Transcript - February 3, 2020, p. 25, lines 20-25) (emphasis added)

70.    Mr. Busby appears at best to have been mis-informed.  The record shows

that this statement was not ignorance on his part, but was part of an intentional effort by USAG

to scapegoat her.

71.    Mr. Busby's false instruction to the hearing panel concerning the need to

hold a hearing in order to suspend Ms. Haney on an interim basis is yet another violation of

Section 10.10(a) of USAG's Bylaws in that it resulted in USAG conducting a hearing that was not "timely, fair and impartial" and is a violation of the Sports Act.

**E.    There Was No Hearing Before Ms. Haney was Suspended on An Interim Basis Despite Her Counsel's Specific Request for One**

72.    That Ms. Haney was in fact not afforded a hearing before she was suspended on an interim basis is yet another violation of USAG's Bylaws and the Sports Act.

73.    The USAG hearing against Ms. Haney began on February 3, 2020, and the hearing panel addressed the imposition of interim measures against Ms. Haney "at the outset" **before any testimony was taken**.  (Hearing Panel Transcript - February 3, 2020, p. 6, line 24).  The Hearing Panel had before it at that time exhibits from attorney Judie Saunders, Esq., who appeared on behalf of some of the athletes who claim to have been harmed, and from USAG.  (Hearing Panel Transcript - February 3, 2020 - p. 7, lines 17-28 - "We did receive your [then for the first time from Ms. Saunders] exhibit list [and a package of exhibits] *** 'We've also received a package from USA Gymnastics with Exhibits 1 through 7") (Id.: p. 8, lines 2-4 "So that is the discovery that the Panel really has been working with."  No witnesses testified prior to the interim suspension was ordered, and consequently no proponents of the relief sought could have been cross examined.  Both testimony and cross examination expressly required in the USOC Due Process Checklist was not allowed.

74.    The hearing panel rendered its decision on interim measures (Hearing Panel Transcript - February 3, 2020 - p. 51, line 21 - p. 54, line 11) orally before a single witness testified.  (Hearing Panel Transcript - February 3, 2020 - p. 177, lines 11-12 "this Panel actually made this [interim suspension] decision prior to listening to [any] testimony")  New supposed "evidence" (uncorroborated double hearsay presented without any foundation) never previously disclosed to Ms. Haney's trial counsel was presented to the hearing panel and it relied on it in ordering the interim suspension.  Both are further separate violations of the USOC Due Process Checklist, which specifically requires a written decision and "fair notice."  No interim suspension

was warranted because there was no imminent harm to the safety of any athlete.  But Ms. Haney was deprived of any opportunity to make that showing.

75.    Outrageously, specifically referenced in the hearing panel's oral ruling against Ms. Haney was purported evidence that was not previously provided to Ms. Haney's counsel and about which there was substantial *ex parte* communication on the record between the hearing panel, USAG's counsel and Ms. Saunders, <u>without Ms. Haney's counsel present</u>! (Hearing Panel Transcript - February 3, 2020 - p. 35, line 6 - "MR. BUSBY: Mr. Prince is in the waiting room.  This is kind of a sensitive matter." through p. 46, lines 19-20 - "MR. BUSBY: We'll bring Mr. Prince back on, absolutely.  Yes, please go ahead.  Mr. Prince?")

76.    Due to these obvious blatant violations of Ms. Haney's due process rights and USAG's Bylaws, on February 3, 2020, Ms. Haney's trial counsel requested in writing "an emergency Ted Stevens Hearing" specifically objecting to the Hearing Panel's interim suspension of Ms. Haney "without the right to presentation of evidence."  (February 3, 2020 email from Russell Prince to Mark Busby).  Mr. Busby responded to that email a half hour later with the following one word email response: "Done."  (<u>Id</u>.)  But it was <u>not</u> "done."  The hearing panel did <u>not</u>, however, hold a Ted Stevens hearing in connection with Ms. Haney's interim suspension, despite Ms. Haney's counsel's express and specific request for one.

77.    The Sports Act was specifically enacted to address abuses of this kind by National Governing Bodies.  Written during an era in when Olympic executives could banish athletes for arbitrary reasons, the Sports Act is the reason NGBs are now required to provide fair notice, a hearing and due process to any coach, athlete or official it wants to ban.  As former Governor John McCain, then Chair of the Committee on Commerce, Science, and Transportation, explained in the Committee's Report on 1998 Amendments to the Act:

> The 1978 Act was based on recommendations of
> President Ford's Commission on Olympic Sport, which had
> worked from 1975 until 1977 to determine how to correct factional

disputes . . .  which were depriving many athletes of the
opportunity to compete.

Report of the Committee on Commerce, Science, and Transportation on S. 2119, 105-325,

September 10, 1998.  One of the primary changes to the 1978 Act contained in the 1988

amendments was described in Senator McCain's Committee's Report as follows: "A number of

measures would be added to strengthen the provisions which protect athletes' rights to

compete."

       78.      Ten years later, the Act's namesake, former Alaska Senator Ted Stevens,

lost his Senate seat as the result of a political corruption case and not long thereafter died

tragically in a plane crash.  Ironically apropos of this case, it was later found that the Department

of Justice lawyers who prosecuted Senator Stevens intentionally hid evidence that would have

helped the late Senator defend against the charges against him:

> [I]n 2012, an investigation revealed that two Department of Justice
> prosecutors intentionally hid evidence in the 2008 political
> corruption case against Senator Ted Stevens, the longest serving
> Republican Senator in history. See United States v. Stevens, No.
> 08-cr-231 (EGS), 2009 U.S. Dist. LEXIS 39046, 2009 WL
> 6525926 (D.D.C. April 7, 2009) (Sullivan, J.). See Henry F.
> Schuelke III, Special Counsel, Report to Hon. Emmet G. Sullivan
> of Investigation Conducted Pursuant to the Court's Order (dated
> April 7, 2009), filed March 15, 2012 in In re Special Proceedings,
> No. 1:09-mc-00198-EGS, 2012 U.S. Dist. LEXIS 195624 (D.D.C.
> March 15, 2012)("Stevens Report"). Special prosecutor Henry F.
> Schuelke III's blistering report found that the United States
> concealed documents that would have damaged the credibility of
> key United States witnesses and helped the late Stevens to
> defend himself against false-statements charges. See Stevens
> Report at 12. Stevens lost his Senate seat as the scandal
> unfolded, dying at age eighty-six in a plane crash two years later.
> See Carrie Johnson, Report: Prosecutors Hid Evidence in Ted
> Stevens Case, NPR News (May 15, 2012),
> http://www.npr.org/2012/03/15/148687717/report-prosecutors-hid-
> evidence-in-ted-stevens-case.

Schuelke based his 500-page report on a review of 128,000 documents and interviews with prosecutors and FBI agents. See Stevens Report at 12. United States Attorney General Eric Holder moved to vacate Stevens' conviction. See Jerry Seper, Inquiry Slams Prosecution of Stevens Corruption Case By Justice Department, The Washington Times (March 15, 2012). The Department of Justice ("DOJ") subsequently "instituted a sweeping training curriculum for all federal prosecutors, and made annual discovery training mandatory." Mark Memmott, Report Slams Sen. Stevens' Prosecutors, NPR News (March 15, 2012), http://www.npr.org/sections/thetwo-way/2012/03/15/148668283/report-slams-sen-stevens-prosecutors.

United States v. Deleon, 15-Cr.-4268 (JB), 2020 U.S. Dist. LEXIS 9688 (D.N.M. Jan. 21, 2020)

79.     USAG Counsel Busby is guilty of the same misconduct in this case.

80.     Mr. Busby's false instruction to the Panel is a violation of Section 10.10(a) of USAG's Bylaws in that it resulted in USAG conducting a hearing that was not "timely, fair and impartial" and is a violation of the Sports Act.

### F.     Mr. Busby Suppressed Substantial Exculpatory Evidence

81.     Of all the violations of USAG's Bylaws and the Sport Act present in this case, perhaps the most egregious was that USAG Counsel Mark Busby had in his possession for months prior to the start of the hearing a mountain of evidence favorable to Ms. Haney in the form of emails sent DIRECTLY to him personally from 16 different prospective witnesses, which he withheld from the hearing panel.

82.     It cannot be disputed that the hearing panel had none of that evidence before it when it issued Ms. Haney's interim suspension or at any point during the Haney hearing.  There is no conceivable legitimate excuse for Mr. Busby's failure to turn over that exculpatory material.  It is akin to what is referred to in other contexts as "Brady Material."[1]

---

[1]     Brady Material is the technical term for a specific type of prosecutorial misconduct.  It is derived from the United States Supreme Court case Brady v. Maryland, 373 U.S. 83 (1963). In that case, the Supreme Court held that the prosecution must turn over to the defense and make available to the tribunal any evidence favorable to the defendant or that would have helped the defendant in some way.  USAG former Legal Counsel Busby is surely familiar with Brady v. Maryland as he was a deputy prosecuting attorney in Indiana's Marion County for nearly 14

Where, as here, a prosecutor withholds favorable evidence from the defense, Brady Material is implicated, and a defendant's rights to due process is violated.  In our system of justice it is the prosecution's job not merely to "win" by getting a conviction, but to seek justice, and accordingly defendants are entitled to put before the ultimate fact finder all evidence that would help his or her case.  That indisputably did not take place here during the Haney hearing.

83.     The evidence Mr. Busby suppressed directly contradicts the allegations made against Ms. Haney.  Each is a first hand account by a present or former athlete who is or was herself trained by Ms. Haney or a parent of one of those athletes and were training partners or trained alongside the claimants.  All of it was highly credible.  For example, on August 21, 2019, **NICHELLE JENNINGS**, parent of former MG Elite athletes Khayla and Alexis Jennings, wrote an email **to** Mr. Busby and USAG investigator Dan Campbell stating:

> Maggie coached my daughters from the age of 3.5 & 7 until they were teenagers! I have NEVER had one of them tell me they were abused! *** Not only did she coach them to being state champions on many different levels in many different events in many different years, she was their mentor, second mother, friend and confidant outside of the gym and still has a unbreakable bond with them today at the ages of 19 & 23. Because she was part of their village, they have moved on to many different sports and life challenges successfully! They spent more time with her than with me a lot of the time! *** Maggie went above and way beyond the call of duty for every young girl she has ever coached! She picked them up for practice & brought them home when my husband and I could not because of business obligations, she made sure they ate and that they were safe at all times.  She put her own family on the back burner for these girls, traveled with them, protected them, made sure they were happy and enjoyed the sport & most of all taught them life lessons! She is their shero! With that being said it is my belief & the belief of many other families who left their children in her care that these accusations are in no way shape or form possibly true! I am no ones judge, however,  I could not be at peace with myself if I stay silent and let these ridiculous, uncredable rumors float without speaking up for the person that I

years before joining USAG ("USA Gymnastics names two to handle safe sport matters" posted on July 19, 2017, https://usagym.org/pages/post.html?PostID=20537), and, on information and belief, he has returned to that post.

know and trust with my children's lives! I pray that these families
who made these ludicrous claims are investigated for slander and
emotional distress that they are causing to the entire MG Elite
Family from former gymnasts to present Olympic hopefuls.

84.     Nichelle's Jennings' daughters Alexis and Khlaya, both by that time

adults, confirmed and elaborated on their personal experiences with Ms. Haney.  In an email to

Mr. Busby dated August 22, 2019, **ALEXIS JENNINGS** stated:

I am writing to express my concern and outrage of the allegations
against my former coach, Maggie Haney. I am extremely hurt,
disgusted, and disappointed by these allegations, which in no way
are true.

I came to Maggie at the age of 7 years old and and trained under
her for the duration of my gymnastics career. In all of my years
spent with Maggie, she has been nothing short an incredible role
model and practically a second mother to me. She has played a
vital part in my life from the moment I walked into her gym. She
has always encouraged me to be my best and work hard for
anything and everything I wanted in the gym and in life. It is
because of her I have been able to accomplish such milestones as
a gymnast, being crowned a state champion and representing my
state at regional competitions.

She has such a special way of making every young girl she's ever
coached feel loved, accepted, and safe under her direction and
care. It pains me to see someone accuse her of these horrific
things that she is in no way capable of. She has always
encouraged her athletes to reach their full potential and cheered
them on no matter what they were doing. She has always been
more than a coach to her team and supported her athletes in and
out of the gym.

Maggie has been and continues to be a vital vein in my life even
after no longer being my coach. She has given so much to me and
taught me lessons that not only benefitted me as a gymnast, but
made me the person I am today. I do not believe these allegations
brought against her are true and I pray the families involved
understand the pain they have inflicted on the current and former
athletes of MG Elite.

Alexis Jennings

Alpha Kappa Alpha Sorority, Incorporated

85.    In a separate email to Mr. Busby dated August 21, 2019, Alexis's sister,

**KHAYLA JENNINGS**, stated:

My name is Khayla Jennings. I am a former gymnast of Maggie Haney's. I am extremely hurt to hear such false allegations made against my former coach. Maggie is not the monster these allegations are making her out to be. I trained with Maggie from the age of three till the age of fourteen and she has been nothing less than an amazing coach and mother figure to me.I started out at Worldwide Gymnastics it was here that my journey with Maggie began.We moved to Monmouth Gymnastics in 2007 and began training.Maggie saw my potential and at the age of seven myself and another teammate began the homeschool program where we trained for TOP's and elite for hours on end.Having her undivided attention she always  encouraged us and made sure training was safe and school was a priority. Maggie has always encouraged me to do my best and keep my head up and even when I doubted myself she would tell me "I know you can do it", and "if I wasn't confident your ability to do it I wouldn't be telling you you can". Although she is a tough coach and practice wasn't always easy she always gave a 110 percent when it came to her athletes. Maggie has made so many sacrifices for me such as picking me up every single morning for practice, dropping me off at home, feeding me, and traveling all over the country with me for gymnastics. If I had no where to go her door was always open. She treated me as if I was her child.There is nothing she wouldn't do to make sure I was at my best. When practices were tough she would always try to make it better often blasting music to get us going so things didn't seem so bad. Maggie was and still is more than just a coach to me. She's made me the person I am today and because of her I can withstand anything that comes my way. She always taught me to be professional, and to never let anyone see my sweat. Maggie is by far one of the most dedicated coaches ever staying after practice while everyone went home to make sure I got my skills down pat. She always gave it her all to see myself and all of her other athletes succeed. I give Maggie full credit for making me the athlete and woman I am today and without someone like her guiding me I would be lost in a lot of ways. It is my intent to present the person that I know as Maggie Haney, someone who is selfless, dedicated, and willing to give everything she's got to make sure her athletes always reacher their full potential.

86.     One parent, **JESSICA ADAMS**, whose daughter has been trained in Ms. Haney program for eight years, has a Ph.D is Exercise Physiology and serves on the Board of Certification for the National Council for Strength and Fitness, so she is uniquely qualified to speak concerning the safety of her daughter.  In an August 21, 2019 email to Mr. Busby, Ms. Adams wrote:

> My daughter is currently competing Level 9 and has been at MG Elite since age 5.
>
> Maggie Haney is tough on the girls, that is no secret. Each parent & gymnast makes a choice every day to stay at MG Elite (I have done so for 8 years). The coaching style is not a good fit for all athletes, but my daughter, husband, and I agree that this is the best fit for her. All parents are fully aware of the style of coaching. I find firm and specific feedback to be the safest coaching environment for my daughter, especially as she progresses to more advanced skills.
>
> I do not watch every practice, however the door is always open and I do observe brief parts of practice at various times. I have done so for the last 8 years. All practices are in full view, the entire gym is visible through glass and the walls do not go to the ceiling so a great deal of coaching is audible to the public.
>
> As a parent with a Ph.D. in Exercise Physiology who serves on the Board of Certification for the National Council for Strength & Fitness, I believe this is the safest training program for my daughter. Unlike many programs, the MG Elite coaching staff ensure that all athletes have developed the strength, flexibility, and body awareness prior to upgrading skills. Additionally, there is a strong focus on perfection of mechanics which also reduces the risk of injury. These coaches give more specific feedback for skill improvement in 15 minutes than many coaches give over the course of a 4 hour practice. All feedback is specific and relevant to the skills at hand. This feedback very clear at competitions as well, where many other coaches simply offer words of encouragement. Continuous, immediate feedback is very important to me as a parent.

When my daughter has had an illness or injury, I communicate with her physician, her, and the coach (either verbally or through text). I always clearly state her abilities and limitations. If necessary, I keep her home or limit her activity. MG Elite coaches have always respected any limitations she may have had, even if they did not always agree.

I find the timing of these allegations very interesting and unfortunate. It is my hope that it does not have a negative impact on my daughter's love for the sport.

Thank you for your time.

Jessica Adams

Jessica B. Adams, Ph.D.

Acting Associate Dean, Kean-Ocean
Executive Director, School of Health and Human Performance
Kean University

(emphasis added)

87.     Another former athlete, now U.S. Air Force Master Sergeant **ALISSA M. CORALLO**, presented her testimony in the form of a formal "Memorandum for USA Gymnastics Safe Sport" dated August 26, 2019, which was also sent to Mr. Busby.  In that Memorandum, MSgt Corallo, in addition to providing a glowing character reference for Ms. Haney, notably observed:

As you all know gymnastics is a skilled based sport that encompasses highly acrobatic maneuvers that without discipline can place an athlete in jeopardy of career ending injury or even death. This discipline does not come easy, especially at collegiate and Olympic levels and one may percieve coaching as being bullied or emotionally abused, when in reality they are being taught the skills necessary to perform at these levels. Your policy states that emotional misconduct is one of the hardest forms of abuse to recognize, but your organization seems to ignore this by pushing forward with the allegations towards Maggie with only an assumption of guilt. The mishandling of these allegations on your part is causing the media to showcase USA Gymnastics as an organization that does not care about their coaches. USA

Gymnasitcs is viewed by the media as only focused on clearing the stigma that is associated with the organization since the Larry Nassar case, which none of the gymnasts Maggie coached were involved with.

(emphasis added)

88.     One current athlete, 11 year old **SARAH COLCHAMIRO,** herself wrote

directly to Mr. Busby.  Young Ms. Colchamiro, in her August 20, 2019 email to Mr. Busby, stated:

> Dear Mr. Busby,
> Hello my name is Sarah and I'm an 11 year old MG Elite gymnast. I am writing to say how special Maggie Haney is. Maggie is a really really great coach. She is such a kind, funny, positive, smart, determined, encouraging, inspiring and such an AMAZING person. I'm starting my 3rd year at MG and I love her so much. She encourages all of us in positive ways in our gymnastics. She is also a second mom to me. This quote reminds me of Maggie: "A good coach can change a game, a great coach can change a life."❤️ I think it's important for you to know that Maggie and Vicky are both the greatest coaches in the world.💕
> Thank you,
> ~Sarah Colchamiro🤸❤️

89.     Shortly after receiving that email, Mr. Busby wrote to Sarah's mother

**REBECCA COLCHAMIRO**, asking to confirm the email was written by her daughter and asking

if Sarah's email was "requested or suggested by any party" to which Mrs. Colchamiro replied:

> Hello Mr. Busby,
>
> Yes Sarah is my daughter. She wanted to do something when she heard about what's going on with Maggie and I suggested this. This was not requested by anyone. One of the moms from our gym gave us the email.
>
> Thank you,
>
> Rebecca

90.     In August 2019, Mr. Busby also received emails from numerous other parents and athletes with personal knowledge refuting the allegations against Ms. Haney. Among them, was an email to Mr. Busby dated August 21, 2019 from then current (Level 10) gymnast **NICOLETTE CROCHET**, stating:

> Dear Mr. Busby,
>
> I am emailing you because of the recent allegations against Maggie Haney who is one of my coaches at MG Elite.  It is very disappointing and upsetting for me  and all of my teammates to hear about all of the negative comments being made against one of our coaches.  I recently transferred to MG ELite from another competitive gym where I lost my passion for gymnastics.  After switching to MG Elite, right away all of the coaches made me feel welcomed and secure.  Once two weeks passed being on the team, I found my love for gymnastics again through the help of all the coaches there.  <u>Maggie Haney is nothing but kind, supportive, understandable, thoughtful, caring, and overall is an outstanding coach.  My teammates and I all find her coaching methods to only be encouraging and helpful, not bullying or verbal and emotional abuse</u>.  Everything she does for MG Elite is out of love and passion for her team and the sport of gymnastics.  She truly cares for all of the gymnasts and puts them before herself.  <u>If any of us ever gets injured, she makes sure we go to a good doctor who gives us the right diagnosis, and also makes sure we get on a great recovery plan</u>.  Thank you for your time in reading my email, and my hope is that I am able to change any negative views that have surfaced recently about Maggie Haney.
>
> Sincerely,
>
> Nicolette Crochet
>
> MG Elite Gymnastics

(emphasis added)

91.     Mr. Busby used the excuse of Nicolette being a minor to question the veracity of her support for Ms. Haney suggesting it might have been coerced.  <u>Mr. Busby wrote back to her mother Jodie Crochet, asking -- as he had inquired of Rebecca Colchamiro and her</u>

daughter, Sarah -- if they had been asked to write these letters.  By return email to Mr. Busby

dated August 21, 2019, **JODIE CROCHET** responded as follows:

> Actually it was my idea ! I thought that it was important to hear
> from the current athletes in the gym as to what the culture is like !
> Sincerely, Jodie Crochet

92.     Jodie Crochet also wrote Mr. Busby a separate email dated August 20,

2019 describing her personal experience with Ms. Haney as her daughter Nicolette's coach:

> Dear Mr.Busby ,
>
> I am writing to you in response to the recent accusations about
> one of my daughter's current coaches , Maggie Haney. My
> daughter has been in USA gymnastics for 7 years and has been
> homeschooled in her gym for the last four years . She moved to
> MG Elite from another gym in November 2018. Her experience
> with Maggie haney and the program at MG Elite has been
> extremely positive. My daughter , Nicolette has never been
> happier , more confident , or more at ease attending practice
> every day. She is thriving physically, mentally , emotionally in the
> environment Maggie has created . I am fully confident as a parent
> that she is being taught gymnastics safely and properly and that
> she is being treated with respect by her coaches. I hope your
> investigation includes gymnasts and families who are at MG Elite.
> Please contact me should you want any further information.
>
> Sincerely ,
> Jodie Crochet

93.     Mr. Busby wrote back thanking Jodie Crochet for her email and stating

that he would forward a copy to USAG investigator Dan Campbell, as he had similarly promised

Khayla Jennings and **HEIDI RIVERA**, another parent of a current MG Elite athlete, who also

wrote Mr. Busby an email supporting Ms. Haney dated July 24, 2019.  Ms. Rivera told Mr. Busby

in an email dated August 21, 2019 that Ms. Haney "has been a great coach and role model for

[her daughter] Hezly and [her family] couldn't be happier with the way Hezly has been treated by

Maggie" during the entire time she was under Ms. Haney's care.  Mrs. Rivera continued in that

email to Mr. Busby as follows:

38

Maggie has shown a lot of care and love for her gymnasts and wants nothing but the best for all of them.  My daughter is so happy every time she goes to the gym and she has had nothing but positive comments everytime we ask her how the day went for her.  I have never seen Hezly as happy and passionate about gymnastics her entire life and this is because Maggie gives her a sense of confidence and comfortability that she never had with other coaches.

94.     But Mr. Busby and USAG investigator Dan Campbell did not follow up with any of these witnesses.  Mr. Busby and Mr. Campbell also failed to respond in any way to the following additional emails in support of Ms. Haney:

**STEF HORSTMAN**, parent of former MG Elite athlete, August 20, 2019 **email to Dan Campbell and Mark Busby**.

**ASHLEY BIJAS**, former gymnast and long time colleague of Maggie Haney, August 23, 2019 **email to Mark Busby**.

**KIERSTEN LIBERO,** parent of MG Elite athlete, August 23, 2019 **email to Mark Busby**.

**JENNIFER LATORRE**, parent of MG elite athlete, August 25, 2019 **email to Mark Busby**.

**PAIVI PUNTILA**, elite level athlete from Finland who sought Ms, Haney out for quality training in the U.S., August 26 and September 19, 2019 **emails to Mark Busby**.

**SHINA MITCHELL**, parent of MG Elite athlete Danae Fletcher, October 5, 2019 **email to Mark Busby**.

95.     None of these prospective witnesses were interviewed by Mr. Busby or Mr. Campbell.  These failures alone are violations of USAG's Bylaws and the Sports Act in that they deprived Ms. Haney of a fair hearing.  But it is far worse because <u>Mr. Busby hid all of this evidence and a phone call he received -- also in support of Ms. Haney -- from former USAG employee **JENNIFER TEITELL** from the hearing hanel</u>.

96.     Despite being told that the letters of support were not solicited, Mr. Busby further compounded his blatantly improper conduct.  Rather than investigate the manner in an

effort to seek the truth, upon receiving this mountain of exculpatory evidence, by letter dated August 23, 2019, Mr. Busby threatened Ms. Haney with "unilateral suspension" falsely claiming in an August 23, 2019 email to Ms. Haney's counsel -- without any basis in fact -- that "athletes are being pressured to defend the club and Ms. Haney." That allegation was of course belied by the numerous emails Mr. Busby actually had before him stating otherwise.

### G. The USAG Hearing Panel Prevented Ms. Haney From Calling Numerous Additional Witnesses and Presenting Mountainous Written and Oral Evidence in Support of Her Case

97.     Ms. Haney's trial counsel was prepared to present evidence from witnesses in person at a Ted Stevens (Sports Act) hearing in connection with her summarily imposed interim suspension. Since the hearing panel denied Ms. Haney's counsel's request to hold a hearing on USAG's request for an interim suspension, not a single person could testify on Ms. Haney's behalf prior to imposition of that suspension. And none of those witnesses were permitted to testify when the hearing went forward.

98.     Witnesses who could have testified on behalf of Ms. Haney at the hearing were (i) highly regarded USAG coaches and judges, (ii) MG Elite personnel with direct personal knowledge of the specific allegations lodged against Ms. Haney by USAG, (iii) gym managers and other professionals, who also personally observed and have direct personal knowledge of the matters in issue, (iv) medical professionals, (v) former athletes trained by Ms. Haney, (vi) parents of current MG Elite athletes, (vii) parents of former MG Elite athletes, and (viii) current MG Elite athletes who were direct training partners with the claimants.

99.     Then contemporaneously prepared emails and letters of support from each of those prospective witnesses summarizing the testimony they would have provided if permitted to do so by the hearing panel overwhelmingly support Ms. Haney and contradict the charges levied against her. A brief categorical description of that direct evidence, which Ms. Haney was denied the opportunity to present, is listed below.

**USAG Coaches and Judges**

**MARY WRIGHT** (USAG Hall of Fame coach of 11 Olympians) - March 26, 2020 letter to Maggie Haney.

**SARAH JANTZI** (USAG National Team Coach; Coach of "Athlete A") - March 11, 2020 to Russell Prince.

**BRUCE PETTY** (USA Gymnastics Coach; two years direct observation during Laurie Hernandez training period) - February 16, 2020 email to Russell Prince.

**ALISON REICHERT** (USA Gymnastics coach; two years direct observation of eight of the 11 complainants) - March 5, 2020 letter to Maggie Haney.

**ANGELA ANDREWS** (former gymnast, USA Gymnastics Judge, coach and parent of two gymnasts) - March 11, 2020 letter to Maggie Haney.

**JACLYN VENTRE** (former gymnast and coach with Magge Haney while Laurie Hernandez was with MG Elite) - February 4, 2020 email to Russell Prince.

**MG Elite and Other Gym Personnel With Direct Personal Knowledge**

**CARLI HANEY** (10 years; class and homeschool teacher, team manager; sister of Maggie Haney; extensive personal interaction with Laurie Hernandez, Riley McCusker and other claimants) -  March 8, 2020 email to Maggie Haney.

**STEFANIE HORSTMAN** (19 years; former MG Elite school teacher, extensive personal interaction with Laurie Hernandez; parent of MG Elite athlete) - February 4, 2020 email to Russell Prince; the Horstman parents had previously sent an email to Dan Campbell and Mark Busby.

**KELLY ALEJANDRO** (Monmouth Gym staff; direct observation) - February 8, 2020 email to Russell Prince.

**Gym Managers and Other Professionals With Direct Knowledge**

**KAYLA JAMES** (Gymland Facility Manager; direct observation) - February 19, 2020 letter to Prince.

**CHRISTINE MELLAS** (Monmouth Gymnastics Gym Manager; direct observation) - February 4, 2020 email to Maggie Haney.

**HUNTER WARCHAL** (Monmouth Gymnastics employee; direct observation) -  March 11, 2020 email to Russell Prince.

**BRIE MOORE** (Monmouth Gymnastics employee and parent of MG Elite athlete; direct observation) - March 7, 2020 email to Russell Prince.

<u>**Medical Professionals**</u>

**EDITA KOTES** (Pediatric Physical Therapist) - March 15, 2020 letter to Russell Prince.

**IVAN CANDELARIA** (Physical Therapist) - February 4, 2020 email to Russell Prince.

<u>**Former Athletes Trained by Maggie Haney**</u>

**CHRISTA ELIAS** (former gymnast and employee) - March 29, 2020 email to Maggie Haney.

**JENNA CRISALLI** (former gymnast) - February 4, 2020 email to Russell Prince.

**CAITLIN QUINN** (former gymnast) - March 16, 2020 email to Maggie Haney.

**DOMINQUEA TROTTER** (former gymnast) - February 4, 2020 email to Russell Prince.

<u>**Parents of Current MG Elite Athletes**</u>

**JO-DEE FRULIO** (school teacher; parent of MG Elite athlete) - February 4, 2020 email to Russell Prince.

**KIERSTIN LIBERO** (parent of MG Elite athlete) - March 18, 2020 email to Mark Busby and Li Li Leung; previously wrote email to Busby.

**DONNA and JEFF SCIACCHITANO** (parents of MG Elite athlete) - February 4, 2020 email to Russell Prince.

**ALISON and ROLANDO CARRASCOSA** (parents of MG Elite athletes; school teacher) - February 4, 2020 email to Russell Prince.

**JOE and DAWN ALBANO** (parent of MG Elite athlete) - February 4, 2020 email to Russell Prince.

**JOHN and DIERDRE FALLON** (parents of MG Elite athlete) - February 4 and March 16, 2020 emails to Russell Prince.

**JASMINE COLON** (parent of MG Elite athlete) - February 4, 2020 email to Russell Prince.

**WILLIAM IMPERIAL** (parent of MG Elite athlete) - February 4, 2020 email to Russell Prince.

**NICK and JULIE ZANETO** (parents of MG Elite athlete; school health teacher) - February 4, 2020 email to Russell Prince.

**DEBBIE JIMENEZ** (parent of MG Elite athlete; medical nurse) - February 5, 2020 email to Russell Prince.

### Parents of Former MG Elite Athletes

**PAUL MORRA** (police officer; parent of former MG Elite athlete Heather Morra) - February 4, 2020 email to Russell Prince.

**ROBIN MORRA** (wife of Paul Morra; mother of former MG Elite athlete Heather Morra) - March 14, 2020.

**TINA HUBGRIGE** (parent of former MG Elite athletes) - February 4, 2020 email to Russell Prince.

**LYNN GREIS** (parent of former MG Elite athlete) - February 4, 2020 email to Russell Prince.

**VERNICIA STRAYHORN** (parent of former MG Elite athlete) - February 11, 2020 email to Russell Prince.

**MARYANN and JEFFREY SCHWARTZ** (Parent of MG Elite athlete) - March 15, 2020 email to Russell Prince.

### Current MG Elite Athlete

**DANAE FLETCHER** (MG Elite athlete) - February 3, 2020 email to Russell Prince; mother SHINA MITCHELL sent email to Mark Busby in October 2019.

100.    Ms. Haney will not detail the testimony of all 36 of those witnesses here.

But portions of some of them are worthy of specific reference. For example, premier elite coach

Mary Wright, a 2020 inductee into the USAG Hall of Fame, who personally coached 11

Olympians and stepped in to replace Ms. Haney at MG Elite at the request of USAG High

Performance Coordinator, Tom Forster, shortly after Ms. Haney was suspended, reported the

following:

> At no point have I ever seen an athlete coached by Maggie
> [Haney] or Vicky [Levine], show signs of depression, beratement,
> coach- fear or any coach inflicted negative behavior. In contrast, I

saw kids talking to each other, cheering each other along and they were emotionally well developed. As a matter of fact, her athletes are very willing to speak up when they don't understand and they voice their questions immediately. It is a very positive environment with a very honest coach/athlete relationship.

101.     USAG National Team Coach Sarah Jantzi attended and was roommates at developmental camps and USAG National Team Camps with Ms. Haney for 10 years (from 2010-2020), and had personal knowledge of Ms. Haney's coaching of her athletes.  Ms. Jantzi stated:

from what I saw at camps, competitions and extra curricular outings Maggie did everything she could to build healthy coach/athlete/ parent relationships to help them reach their goals of becoming the best they could be. Maggie loved her athletes like they were her own kids and it always seemed they loved her back.

Based on her personal knowledge and observation, Ms. Jantzi stated the following as to what she observed between Ms. Haney and Laurie Hernandez:

Laurie was the first of her athletes I remember when we became roommates. You could tell the love Laurie had for Maggie every day. She seemed very comfortable telling Maggie everything. Looking in on the coach/athlete relationship Laurie and Maggie had, you knew that Laurie trusted and loved Maggie like a second mom.

102.     Veteran USAG coach Bruce Petty also has personal knowledge of Ms. Haney's coaching of Laurie Hernandez, having spent three days a week for two years with them.  Coach Petty had the following to say on the subject based on his direct observation:

During this two year time period, I witnessed Maggie be an encourager, motivator and mentor leading her athletes with enthusiasm and care. There were times I remember Maggie stepping in to care for her athletes, specifically Laurie Hernandez, by going above and beyond the coaching responsibilities. She would care for them in injury and/or illness,and attend doctor appointments when scheduling conflicts prevented a parent being able to go.

> For many years, I have seen nothing but an exceptional coach within Maggie Haney. She has the unique ability to motivate firmly and uphold high expectations for her athletes while also demonstrating care and concern for their well-being.
>
> I have been a high level competitive USAG gymnastics coach for over 35 years. I would highly recommend, without reservation, Maggie Haney as a coach and mentor to any athlete or child including my own.

103.    USAG Coach Alison Reichert also personally observed Ms. Haney and Laurie Hernandez for more than 20 hours per week during a two-year period leading up to the 2016 Olympics when they trained at the same facility.  Coach Reichert attended practice six hours a day, three days per week for two full years for the specific purpose of observing, and she similarly reported the following:

> What I observed were two coaches who encouraged and positively motivated their athletes. The environment was always fun and light-hearted. On numerous occasions the girls would try to teach us all a new dance they had learned, or sang their favorite song at the top of their lungs in the middle of practice. Coaches and gymnasts could be found laughing at any given moment of the day. Never once in my two year experience watching Maggie Haney and MG Elite did I ever observe coaches participating in abusive behavior. What I observed was a tight knit community of athletes being cared for by two knowledgeable and empowering coaches who continued to search for ways to positively motivate and help their athletes find the success that they came to MG Elite searching for. I never once witnessed a coach put her hands on an athlete other than to safety spot them. I never once heard or observed a coach comment on an athlete's weight. I never once heard a coach use inappropriate, degrading or insulting language with any of their athletes. I never once witnessed any athletes being "punished" by use of conditioning, nor did I ever observe Maggie treat any of the athletes negatively due to "eating badly".

104.    The Haney hearing panel's refusal to permit Ms. Haney to present this evidence was just one more violation of Section 10.10(a) of USAG's

Bylaws in that it resulted in a hearing that was not "timely, fair and impartial" and

is therefore a violation of the Sports Act.

   **H.     The USAG Hearing Panel Was Biased**

   105.   The hearing panel USAG "constructed" held what it called hearings on

February 3, 5, 17, 18, 24, 25, March 2, 4, 10, 12, and 26, 2020.

   106.   The panelists were neither disinterested nor impartial.  So abominable

was the panel that it credited testimony from a witness who admitted in writing to telling one of

the complainants to lie suggesting: ***"you could say she bullied you into doing it"*** referring to

a positive statement the complainant made about Ms. Haney.  The USOC Due Process

Checklist specifically states that under the Sports Act before an athlete or coach may be

declared ineligible that person must be provided a "hearing before a disinterested and impartial

body of fact finders."  As stated, USAG legal counsel Busby admitted in a January 22, 2020

email to Ms. Haney's trial counsel that "[t]he panel was constructed by the [USAG] Ethics and

Grievance Committee afer (sic) Ms. [XX] [then barely of age athlete representative] volunteered"

to serve on it.  (emphasis added)  Mr. Busby's January 22 letter claimed as to that athlete panel

member and the other panelists: "Each is a disinterested person with no personal knowledge or

familiarity with the parties."  But that defies any logic as to the athlete panelist because surely

she could not have "volunteered" for something about which she had no familiarity.

   107.   The athlete representative is "a big name in the world of rhythm

gymnastics.  She was a USA national team gymnast for seven years … and competed at the

2014 and 2015 World Championships and the 2017 University Games."  It is literally

unfathomable for USAG and the then 20-year old athlete to contend that she had "no familiarity

with the parties."   USAG cannot credibly claim that the athlete representative did not know that

she was volunteering to serve on a panel in a hearing in which charges against a prominent

coach were being made for alleged verbal and emotional abuse.  USAG's charges against Ms.

Haney were widely publicized in the news media.  For example, the Los Angeles Daily News reported that:

> More than a dozen people including Olympic gold medalist Laurie Hernandez are expected to testify against Maggie Haney in a USA Gymnastics hearing Monday on verbal and emotional abuse allegations against the New Jersey-based coach of Olympic and world champion gymnasts, the Southern California News Group has learned.

108.    The athlete representative knew exactly what she "volunteered" for.  That she had a pre-existing bias on the issue of relations between gymnasts and their coaches and was personally troubled by demanding coaching styles was clear from her public statements about her personal experiences in elite gymnastics with USAG coaches.  She is on record as stating:

> I can't imagine having a bad relationship with my coaches, because that would take away my passion for the sport.  My coaches were always there for me and encouraging me. * * * Some pressure was good, as it drove me to improve myself.  But some pressure was bad that wore down my confidence and made me pessimistic about my abilities.

(Id.)

109.    USAG shortly thereafter rewarded the athlete representative for her efforts, naming her to serve on the prestigious Athletes' Advisory Council to USAG's Board of Directors.

110.    USAG's intent was clear.  Pretend that it has changed its culture of seeking by any possible means to avoid public scrutiny, and go after and discipline Maggie Haney severely to divert attention from USAG's horrid past.  And USAG did just that.  Approval to target Ms. Haney likely came from and was approved by the very top of USAG's corporate hierarchy, USAG President Li Li Leung.  President Leung surely knew USAG continued to be lambasted in the press.[2]  As Dr. Edward Nyman, who was hired by USAG as Director of Sports

---

[2]      President Leung actually had personal knowledge of some of the testimony that likely would have acquitted Ms. Haney as she was an addressee on email letters from Kierstin Libero supporting Ms. Haney

Medicine replacing convicted sexual predator Larry Nassar and was then quickly fired, stated

Ms. Leung specifically told him:

> On my first day, [USAG President] Li Li [Leung], herself, admitted
> that the organization was, and I quote, 'a house of cards,'" *  *  *
> "She also stated that because of the looming risk of decertification
> by the USOC – their 'PR' IMAGE WAS SO PRECAROUS (I
> BELIEVE NUCLEAR WAS HER EXACT TERM) – IT HAD TO BE
> PROTECTED AT ALL COSTS AND ABOVE EVERYTHING."

111.    USAG had no business even hearing the Haney matter as it should have

been before the U.S. Center for SafeSport ("SafeSport").  The November 22, 2019 Summary of

Allegations against Ms. Haney, which described what was to be heard by the hearing panel,

charged that she violated the SafeSport Code.  SafeSport opened in 2017, acting as the first

and only national organization of its kind.  Its focus is to seek to eliminate all forms of abuse in

amateur sports, including claims of bullying and harassment, not just physical and sexual

misconduct.  There can be no dispute that the claims of alleged verbal and emotional

misconduct alleged against Ms. Haney in this case fall within the jurisdiction of SafeSport.  See

Cecelia Townes, Q&A With Shellie Pfohl, CEO of the U.S. Center for SafeSport, ESPNW (Apr. 6

2017), ("The U.S. Center for SafeSport is designed to make sure that athletes are safe,

supported and strengthened through sports. To that end, we address bullying, harassment,

hazing, as well as physical, emotional and sexual misconduct in sport.")

http://www.espn.com/espnw/voices/article/19082380/qa-shellie-pfohl-ceo-us-center-safesport;

see also Alexandria Murphy, Better Late than Never: Why the USOC Took So Long To Fix a

Failing System for Protecting Olympic Athletes from Abuse, 26 Jeffrey S. Moorad Sports L.J.

157, 164-165 (2019), (https://digitalcommons.law.villanova.edu/mslj/vol26/iss1/5)[3]

---

sent to Ms. Busby on August 23, 2019, which (as shown) he hid from the Hearing Panel, and March 18,
2020, unless Mr. Busby hid those letters from Ms. Leung as well.  Regardless, USAG cannot dispute that
neither Mr. Busby nor Ms. Leung responded to either of Ms. Libero's letters.

[3]       In the wake of Ms. Haney's highly publicized sanction numerous claims of alleged verbal abuse
by coaches have been advanced.  NGBs for gymnastics in the United Kingdom and New Zealand are
addressing the matters far differently than USAG did.  Both handled the cases by turning them over to
outside investigators.  (https://www.insidethegames.biz/articles/1096357/british-gymnastics-bac-helpline;

112.     But USAG did not refer the Haney matter to SafeSport.  It kept the case for itself -- contrary to its treatment of every other National Team coach -- securing the predestined result.

113.     Throughout the course of the hearing, Ms. Haney was muzzled by a confidentiality agreement USAG demanded she sign before subjecting her to its unfair proceeding.  As a strict and non-negotiable condition of proceeding before the Hearing Panel, USAG required Ms. Haney to sign a document entitled "Confidentiality Acknowledgement and Agreement."  Among many other unfair and overbroad requirements in it, that document states in paragraph four as follows:

> All testimony, argument and material submitted to the Hearing
> Panel will be considered confidential, and must not be distributed,
> in any form, without express authority granted by both the
> Corporation's Legal Representative and the related parties.

114.     But USAG itself was apparently of the belief that it need not abide by the confidentiality agreement.

115.     USAG President Leung if fact used the corrupt ruling -- within days of its the issuance -- went on a press junket with Ms. Haney's most famous accuser, Laurie Hernandez, publicizing the Haney case and its ruling.  As was prominently reported in USA Today:

> In a frank conversation Wednesday with Final Five member Laurie
> Hernandez, USA Gymnastics president and CEO Li Li Leung
> acknowledged the organization's past failures and said it is
> working to rid the sport of its toxic culture. The two spoke as part
> of "Stronger Than You Think," a three-day livestream devoted to
> youth mental health.
>
> "**Historically we have allowed that kind of behavior. We have
> allowed that kind of coaching. We actually have even
> rewarded it in the name of winning in the past**," Leung said.

https://www.stuff.co.nz/sport/other-sports/300077480/gymnastics-new-zealand-steps-away-from-handling-complaints)

"**But this is a new era. We will not reward it, we will not tolerate it. It's really important that we make that stand**."

(https://www.usatoday.com/story/sports/olympics/2020/05/27/usa-gymnastics-ceo-li-li-leung-promises-change-culture-abuse/5271388002/) (emphasis added)

116.     The Haney hearing panel, with Legal Counsel Busby as their guide, was thus, on information and belief, simply following President Leung's mandate of seeking to protect USAG's precarious "PR" image "at all costs and above everything else."  But that was and is not the worst of it.  While President Leung was promoting USAG and herself, traversing all forms of media with Ms. Haney's former athlete, Ms. Hernandez, USAG appeared to be condoning, supporting and approving Ms. Hernandez's (slanderous) public statements about Ms. Haney.

117.     Fearful of retaliation by USAG, Ms. Haney has until very recently abided by that requirement.[4]  She consequently has been scandalized in the press, and robbed of the opportunity to contemporaneously publicly respond to the charges.  Previously lauded for Laurie Hernandez's success at the 2016 Olympic in Rio, Ms. Haney was discarded like she was trash by USAG when it suited their whim, as USAG did previously to another influential figure in American gymnastics.  (See "Olympian Terin Humphrey: USA Gymnastics 'discarded me like I was trash.'"

---

[4]     Pursuant to the terms of paragraph 6 of the Confidentiality Agreement, Ms. Haney is permitted "to respond in any public, private, or electronic venue to correct misstatements of fact made by either claimants, witnesses, [and/or] USA Gymnastics."  Much unlike USAG and Laurie Hernandez, however, Ms. Haney she declined to try the case in the media before it was over and waited until the hearing was over to speak out.

I.     **USAG's Most Recent Efforts to Silence Ms. Haney**

118.    Confidentiality is a one-way street at USAG.  The charges it levies and its imposition of penalties against USAG members, including Ms. Haney, are prominently displayed on the USAG website and publicized for all the world to see.  Ms. Haney though, as a condition to participate in any way in the proceedings against her and maintaining her USAG membership, was forced to sign an extremely broad confidentiality agreement.  This allowed USAG President Leung and Laurie Hernandez to tell the press whatever they wanted about the case USAG brought against Ms. Haney which they clearly did, but --- according to USAG -- prohibited Ms. Haney from speaking publicly about the charges against her.

119.    USAG will apparently go to any length to keep the truth from being uncovered.  They are so fearful of Ms. Haney publicly telling her side of the story and revealing the shocking details of what transpired at the Haney hearing, they recently brought new charges against her for allegedly violating the confidentiality agreement.

120.    <u>Ms. Haney is suspended until April 2025</u>.  ***One would think that USAG has more pressing issues (for example, recompensing the victims of Larry Nassar) it could and should spend time and money on, rather than seeking to extend the period of Ms. Haney's ban from coaching.  But apparently not.***  In a clearly biased, vindictive and retaliatory manner, on February 10, 2021, USAG brought new charges against Ms. Haney for alleged breach of the confidentiality agreement she was previously forced to sign.

121.    The sole basis for the new charges -- Ms. Haney communicated to a reporter for the New York Times the simple truth, that she has been wrongly accused, an Arbitrator had thrown out the findings made by the Haney hearing panel as to four of her alleged accusers, and reduced her suspension by three years.

122.    Perhaps most shocking about these new charges is that between the time of the Haney hearing and last month, USAG completely revised their Bylaws eliminating all provisions in it requiring "fair hearings" in disciplinary matters.  In place of those Bylaw

provisions (which Ms. Haney unequivocally demonstrates in this action USAG clearly breached in her case), USAG created new confidential "Resolution Panel Procedures."  Those Procedures differ significantly from the USAG procedures that were in place and utilized by the prior Haney hearing panel.  When those new procedures were adopted and implemented, pursuant to what authority, and when notice of them was given to USAG members -- to be sure none was provided to Ms. Haney -- are all mysteries.  Perhaps most notoriously, the new USAG Hearing Procedures provide for no basis for appeal!

123.    These are the lengths to which USAG is going in what is a thinly veiled effort to scare Ms. Haney from revealing to the world USAG's dishonest and unfair treatment of her.  That conduct should not be countenanced.

## LEGAL CLAIMS

### COUNT I
### (For a Declaratory Judgment Under the Sports Act)

124.    Plaintiff realleges and incorporates by reference the allegations stated in paragraphs 1 through 123 above as if stated here in full.

125.    Plaintiff seeks declaratory relief in this action under both Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

126.    USAG and its former counsel defendant Busby engaged in wanton disregard for its own rules and the Sports Act in connection with, during the course of the Haney hearing and following it.

127.    Plaintiff has been irreparably harmed by USAG's and Mr. Busby's wrongful conduct, and she has exhausted all of her internal USAG remedies.

128.    Plaintiff accordingly asks the Court to enter judgment in her favor and against defendant USA Gymnastics, Inc. declaring that it violated its own Bylaws and the Sports Act in connection with the proceedings that resulted in the April 29, 2020 USAG hearing panel decision in her case in that:

(a) USAG failed to give Ms. Haney adequate notice of the charges against her;

(b) USAG failed to timely establish and approve hearing procedures that, at a minimum, established a reasonable and fair schedule and guidelines for discovery;

(c) USAG failed to identify witnesses for Ms. Haney and her trial counsel in advance of the hearing;

(d) USAG failed to provide Ms. Haney's trial counsel with copies of the documents contained in USAG's investigative file;

(e) USAG failed to provide Ms. Haney's counsel with copies of any exhibits prior to presenting them to the hearing panel;

(f) USAG failed to keep the proceedings conducted by the hearing panel confidential;

(g) USAG made no effort whatsoever to comply with even the most lax evidentiary rules;

(h) USAG legal counsel defendant Mark Busby withheld and suppressed substantial exculpatory evidence from the hearing panel (i) during pre-trial proceedings, (ii) the first day of the hearing when the panel suspended Ms. Haney on an interim basis, and (iii) throughout the remainder of the hearing;

(i) USAG counsel Busby falsely instructed the hearing panel that Ms. Haney was not entitled to any form of due process; and

(j) the hearing panel was neither disinterested nor impartial and was in fact biased.

## COUNT II
### (For Money Damages Under the Sports Act)

129.    Plaintiff realleges and incorporates by reference the allegations stated in paragraphs 1 through 128 above as if stated here in full.

130.    USAG and its former counsel defendant Busby engaged in wanton disregard for its own rules and the Sports Act in connection with, during the course of the Haney hearing and following it.

131.    Plaintiff has been irreparably harmed by USAG's and Mr. Busby's wrongful conduct, and she has exhausted all of her internal USAG remedies.

132.    Plaintiff seeks damages against both USAG and defendant Busby in an amount to be proven at trial.

## COUNT III
### (For Vacatur of the Arbitrator's Award under the FAA)

133.    Plaintiff realleges and incorporates by reference the allegations stated in paragraphs 1 through 132 above as if stated here in full.

134.    The December 3, 2020 Appellate Arbitration Award, which was based on a narrowly constricted process mandated by USAG in  which live testimony was not permitted, provided some relief to Ms. Haney, but was so imperfectly executed that a mutual, final and definite award upon the subject matter was not made.

135.    Among numerous other improprieties, the Arbitrator ignored defendant Busby's intentional withholding of evidence, knowingly false instructions to the hearing panel, the failure of the hearing panel to establish and approve fair hearing procedures, USAG's failure to identify witnesses and documents in advance of the hearing, failure to keep the hearing confidential, failure to comply with even the most lax evidentiary rules, suspending Ms. Haney on an interim basis without an evidentiary hearing or issuance of a written decision, and that the hearing panel was clearly biased.

54

136.     The Arbitration Appellate Award conflicts with USAG's then-applicable Bylaws and the Sports Act, is not rationally supported by or derived from the Sports Act and is not based on general considerations of fairness and equity.

137.     The December 3, 2020 Award should therefore be vacated, to the extext it did not entirely void the underlying April 29, 2020 hearing panel decision in Ms. Haney's case.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Maggie Haney prays for judgment in her favor against defendants USA Gymnastics, Inc. and Mark Busby as follows:

A.     For a declaration that the April 29, 2020 USAG Hearing Panel Decision and December 3, 2020 Appellate Arbitration Award are  void *ab initio*, vacating them both in their entireties;

B.     Awarding plaintiff Maggie Haney actual and consequential damages for injuries she has suffered and continues to suffer as the result of the heinously wrongful conduct by the defendants;

C.     Awarding Ms. Haney her reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding such other and further relief as the Court deems just and proper, including any extraordinary equitable relief as permitted by law or equity to attach, impound, or otherwise restrict the defendants' assets to assure Ms. Haney has an effective remedy.

New York, New York
March 29, 2021

STEAMER HART LLP


By:  /s/ Bruce Hart___
        Bruce Hart
86 Fleet Street
Brooklyn, New York 10016
(917) 680-2722 - phone
(212) 500-7973 - fax
bhart@steamerhart.com

OF COUNSEL:

Steven Altman, Esq.*
Altman & Company P.C.
P.O. Box 590, 123 N. Sea Road
Southampton, New York 11969
(917) 207-3001 - phone
(646) 349-3387 - fax
Steve@CommercialTrialLawyer.com

*Attorneys for Plaintiff*
*Maggie Haney*


*Pro Hac Vice Application to be Submitted*